VILLAGE OF BENSON v. ST. PAUL, MINNEAPOLIS & MANITOBA
RAILWAY COMPANY and Another.

July 28, 1898.

Nos. 11,147—(214).

Street across Railway—Finding not Sustained by Evidence.
   Evidence considered, and *held* insufficient to sustain a finding of a dedi-
cation of the locus in quo as a public street.

Action in the district court for Swift county against defendant
railway companies to enjoin the obstruction of an alleged public
street. The cause was tried before Powers, J., without a jury, and
judgment was ordered in plaintiff's favor. From an order denying
their motion for a new trial, defendants appealed. Reversed.

*M. D. Grover* and *S. L. Campbell*, for appellants.
   To constitute a common-law dedication there must be an intent
to dedicate the land for a public highway on the part of the owner,
and an acceptance by the public. Wilder v. City of St. Paul, 12
Minn. 116 (192). See also People v. Jones, 6 Mich. 176; Baker v.
Johnston, 21 Mich. 319; Talbott v. Grace, 30 Ind. 389; Irwin v.
Dixion, 9 How. 10. On the question of acceptance, see Hamilton
v. State, 106 Ind. 361; Amsbey v. Hinds, 46 Barb. 622; Town v.
Templeton, 71 Ill. 68; Tallman v. People, 12 Mich. 401; Lee v. Lake,
14 Mich. 12; City v. Detroit, 23 Mich. 173, 208. The permissive use
by the public concurrently with the use by the owner has been
uniformly held insufficient to create an adverse right in the pub-
lic by way of dedication by the owner. Irwin v. Dixion, supra;
City v. Canavan, 42 Cal. 541; Tucker v. Conrad, 103 Ind. 349; Grif-
fin's Appeal, 109 Pa. St. 150; Com. v. Philadelphia, 132 Pa. St. 288.

*F. M. Thornton* and *T. F. Young*, for respondent.
   As to what constitutes a common-law dedication, see Wilder v.
City of St. Paul, 12 Minn. 116 (192); Case v. Favier, 12 Minn. 48
(89); Village of Mankato v. Willard, 13 Minn. 1 (13); Morse v. Zeize,
34 Minn. 35; Klenk v. Town of Walnut Lake, 51 Minn. 381; Bruns-
wick v. City, 88 Ga. 68; Village v. Jenison, 86 Mich. 567. As to
   73 M.—31

acceptance by public of dedication, see Wilder v. City of St. Paul, supra; Kennedy v. Le Van, 23 Minn. 513; Brakken v. Minneapolis & St. L. Ry. Co., 29 Minn. 41; Morse v. Zeize, supra; State v. Eisele, 37 Minn. 256; Hall v. Kauffman, 106 Cal. 451. As to street crossings through railroad yards, see Commissioners v. Detroit, 93 Mich. 58; Battle v. Tiffany, 99 Mich. 471.

BUCK, J.

Part of the year 1870, the First Division Company of the St. Paul & Pacific Railway Company, the predecessor in interest of defendants, owned the land constituting the town site of the village of Benson, including the right of way across said land, 250 feet wide. It constructed its road through said land, built its depot and had its cars running on said road by July 1, 1870; and it platted the town in October, 1870. This plat was admitted in evidence, and shows that the railroad right of way divided the village into two parts, with some 28 blocks and parts of blocks on the north side of said right of way, and about 12 blocks and parts of blocks on the south side thereof. Various streets are designated on the plat,—some running east and west, and some running north and south. Those running east and west extend the full length of the plat, while those running from north to south do not appear on the plat to extend across the railroad right of way, although if the lines were prolonged, the streets on each side of such right of way would connect, as the ends thereof are directly opposite each other.

On the north side of, and along and parallel with, this right of way, and extending nearly across the plat, is Atlantic avenue, 50 feet wide. The division between the railroad right of way and Atlantic avenue is designated by a line on the plat which crosses all of the streets running north and south; but there is no line crossing the streets on the north side of the avenue, the space being open to connect with the streets. The streets on the north side of the right of way, and running north and south, are designated by numbers, while those south of the right of way are not so designated, either by numbers or names, although located directly opposite, and in line with, the streets on the north

side of the right of way. Upon the map, Twelfth street—the one in controversy—is cut off from the right of way by the south line of Atlantic avenue, which line is drawn directly across Twelfth street, showing that it stops at the right of way. In other words, the line of Twelfth street is not prolonged across the right of way.

The lines drawn upon a map mean something, and are put there for a purpose. Courts give effect to such lines, as well as to the language found upon a plat. Gilbert v. Emerson, 60 Minn. 62, 61 N. W. 820.

This plat was filed for record in the office of the register of deeds on October 7, 1870, in accordance with law, and hence its contents must be deemed a matter of public notoriety.

We understand that counsel for respondent concede that there were no streets in said village, marked "Dedicated," across said railroad right of way, and that plaintiff's right of action is predicated upon acts of the appellants, and which it is claimed were sufficient to constitute a dedication at common law.

We have not referred to the map so made by the railroad company for the purpose of showing that from its appearance there could be no presumption that it did not dedicate any of the streets therein marked, but for the purpose of showing that the legal effect of the lines drawn upon the plat clearly shows that it was the intent of the railroad company not to dedicate any part of its right of way as or for Twelfth street. It not only shows a want or failure of dedication in this respect, but its express meaning is, by the lines on its map, to assert formally and directly that it did not dedicate any streets across its railroad right of way; and by filing its map in the office of the register of deeds the public were warned accordingly.

With this intent so expressly stated, and with this warning to the public, have the railroad company and the village so acted that the essential requirements necessary to constitute a common-law dedication have been complied with? The action is one to compel the defendants to remove obstructions from the alleged street crossing, and to replace upon said crossing certain planking which defendants had removed. As the original plat expressly rebuts any presumption that the railroad company intended to dedicate a

crossing over its right of way at Twelfth street, the burden of proving that it has by its acts dedicated for public use this crossing rests upon the village of Benson, the plaintiff herein.

One of the principal grounds relied upon by plaintiff to show a common-law dedication is that at the crossing in question the railroad company in July, 1870, put in a plank crossing. It appears that this crossing was put in by the railroad company under the direction of their agent, one S. P. Folsom, who testified that after the depot was located, and before the plat was certified and recorded, he put in a temporary crossing to accommodate their business in connection with the depot, and it turned out to be where Twelfth street was located, and that it was not put in for a public crossing, as there were no public streets there,—nothing but wild prairie,—and that he had no authority to locate a road across the railroad right of way. The depot was west of Twelfth street, and extended to Thirteenth, and partly into it; and here was a public crossing, where passengers came to and left the depot at the west end thereof. This crossing was wider and better than that on Twelfth street. The crossing on Twelfth street was put there, at the request of the local depot agent, to facilitate getting at the lumber and wood, some of which was unloaded on the right of way. This evidence was undisputed, and so was the fact that this part of Twelfth street in controversy had been used ever since 1870 by the railroad company for storing its cars and switching purposes, and was within its railroad yards. Several other witnesses called and sworn on behalf of defendant strongly corroborated Mr. Folsom.

The plaintiff's evidence showed that once or twice the village had repaired the crossing by putting on dirt, and that there had been considerable public travel over it at various times up to the year 1884, since which time it has been obstructed by the defendants, and public travel excluded therefrom.

Evidence upon the question of dedication was given by both parties at great length, but we do not deem it necessary to enter into a statement or analysis of the same. We are of the opinion that the plaintiff failed to show an intent on the part of the railroad company to dedicate this crossing to public use. Its map shows to

the contrary. Its continual use of the premises for storing cars and switching purposes militates strongly against this view. Its need of the premises for such purpose tends to rebut any such concession on its part. And its excluding the public from using this crossing in 1884, and continuing doing so ever since, strongly corroborate its claim.

Nor do we find any satisfactory evidence that the plaintiff relied upon the railroad company ever having dedicated the premises in question for public use as a street crossing. From 1884 until the commencement of this action (a period of 11 years) it permitted this crossing to be obstructed and used by defendants for railroad purposes,—storing and switching cars,—without objection on the part of plaintiff. We think it may be very pertinently asked why this village during these many years silently permitted a railroad corporation to permanently and exclusively occupy what it now claims to be one of its public streets? Its officers either grossly neglected their public duties in this respect, or else deemed the locus in quo railroad property, and subject to be used exclusively as such. The latter view is the more charitable, and probably is the more correct; for we find that the village authorities in 1891, by their resolution, sought to condemn this very land for a public street under the law of eminent domain, and, after due proceedings had for such purpose, a jury decided that, as there were already two streets opened, a third one was not necessary. While this proceeding was not conclusive either against plaintiff or defendants upon the question of dedication, it was very cogent evidence that defendants never intended to and had not dedicated, and that plaintiff had never accepted such dedication of, the crossing in question.

We do not feel called upon to enter into any extended discussion of what constitutes a dedication in pais. To devote a piece of real property to public use is frequently to part with a valuable right; and, to fasten this right upon such property, the evidence must be at least reasonably clear that the owner has, by his conduct, manifested an intent to abandon it to the whole public, and has in fact done so. One of the controlling elements is intent. Such

intent is wanting in this case. An acceptance of dedication by the public authorities or by the public is also wanting.

On a former appeal (62 Minn. 198, 64 N. W. 393) this court intimated that the evidence was sufficient to establish a common-law dedication, but the question then involved was the insufficiency of the complaint, and was the only point there intended to be decided. This record does not show any such dedication.

Order reversed.